IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

800 MARKETING SOLUTIONS, INC.,    *

      Plaintiff,    *

vs.    *

                    CASE NO. 3:06-CV-038 (CDL)

    *

GMAC INSURANCE MANAGEMENT
CORPORATION (a/k/a GMAC    *
INSURANCE),

    *

      Defendant.

    *

O R D E R

This litigation arises from a dispute related to Plaintiff's offer to lease a vanity telephone number, 1-800-GMAC-INS, to independent insurance agents affiliated with Defendant. In this action, Plaintiff asserts claims for defamation and tortious interference with contractual and prospective business relations. Defendant asserts counterclaims for unfair competition and false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as various state law causes of action arising from Plaintiff's use of "GMAC-INS." Presently pending before the Court are Defendant's motion for summary judgment on Plaintiff's claims and the parties' cross motions for summary judgment on Defendant's counterclaims. For the reasons stated herein, the Court grants GMAC Insurance Management Corporation's Motion for Summary Judgment on Plaintiff's Claims (Doc. 69); however, the Court finds

1

that genuine issues of material fact exist as to Defendant's counterclaims, and thus denies GMAC Insurance Management Corporation's Motion for Summary Judgment on Its Counterclaims (Doc. 64) and Plaintiff's Motion for Summary Judgment (Doc. 66).[1]

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  It is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citation omitted).  In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  The movant is not required to come forth with evidence negating the nonmovant's claim. *See id.*

Once the movant meets its burden, the nonmovant must produce evidence to show that there *is* a genuine issue of material fact. *See*

_____

[1]Also pending before the Court are the following motions: Defendant's Motion for Sanctions (Doc. 44), Plaintiff 800MS's Notice of Objection and Motion to Strike Defendant GMACI's Statement of Additional Material Facts (Doc. 126), and 800MS's Motion to Strike and File Under Seal Portions of GMAC Insurance's Reply in Support of Its Motion for Summary Judgment on Plaintiff's Claims (Doc. 133).  The Court denies each of these motions.

*Celotex Corp.*, 477 U.S. at 324. The moving party "must go beyond the pleadings," *id.,* and point to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party is not required to produce evidence in a form that would be admissible at trial, but it must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.;* Fed. R. Civ. P. 56(e).

A movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in that party's favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

3

FACTUAL BACKGROUND[2]

## I.  The Parties

Plaintiff 800 Marketing Solutions, Inc. ("Plaintiff" or "800MS") is a Georgia corporation that acquires and markets "vanity" telephone numbers for potential commercial use by other businesses. In addition to leasing the actual telephone number, Plaintiff provides a service through which calls can be routed to a specific geographic area as determined by the location of the original caller. (*See* Shores Dep. 49:17-50:7, August 13, 2007 [hereinafter Shores I].) 800MS promotes this system as a cost effective marketing tool that eliminates the need for a central call center. (*See id.* at 47:14-23.)

Defendant GMAC Insurance Management Corporation ("Defendant" or "GMACI") is in the business of selling automobile property and casualty insurance. GMACI is a subsidiary of GMAC Insurance Holdings, LLC, which, in turn, is a subsidiary of GMAC LLC.[3] (GMACI Ex. 2, Family Tree for GMAC Insurance Holdings, LLC; Spilman Dep. 87:1-3.) In addition to its direct-to-consumer sales methods, GMACI enters into contracts with independent insurance agents ("Agents") to

---

[2]The Court construed the facts in the light most favorable to the non-moving party on each of the three pending motions for summary judgment.

[3]GMAC Insurance Management Corporation is one of many GMAC-affiliated insurance entities that use the terms "GMACI" and "GMAC Insurance." (*See* Exs in Supp. of GMAC Ins. Mgmt. Corp.'s Mots. for Summ. J., Ex. 3, Sample Mailings Using "GMAC Insurance" [hereinafter GMACI Ex. #]; Spilman Dep. 25:1-7, 53:7-54:2, 66:8-12, Aug. 8, 2007.)

sell its products. (Spilman Dep. 37:8-24, 48:10-21, 53:2-6; GMACI Ex. 4, Agency Agreement.) The agency agreements designate each Agent as "an independent contractor and not an employee of [GMACI]." (GMACI Ex. 4 at Art. I.A.) The agreements further provide that each Agent "shall be free to exercise his own judgment as to the persons from whom he shall solicit insurance and the time, place and manner of such solicitations[,]" and "shall have the exclusive control of his time[ and] the conduct of his agency."[4] (*Id.*; *accord* Spilman Dep. 55:16-57:7; Sorrels Aff. ¶ 7, Feb. 18, 2008.)

## II.  Plaintiff's Solicitations to the Agents

In 2003, 800MS began communicating with GMACI about the possibility of the two companies doing business together. Although GMACI expressed some interest in Plaintiff's technology, it did not request that 800MS take any action in furtherance of a deal. (*See* Shores I at 252:5-255:3; GMACI Ex. 9, Email Chain, March 3, 2005.) Nonetheless, 800MS secured the rights to 1-800-462-2467, a number that translates to the alphanumeric telephone number "1-800-GMAC-INS." (Shores I at 118:6; *see also* Shores I at 112:2-5; GMACI Ex. 7, Email, July 17, 2003.) Plaintiff presented the number to GMACI as "a great marketing tool" that "consumers will . . . remember." (Shores I at 139:18-19, 118:19-24; *see also* Shores I at 130:3-9.) Although

---

[4]An Agent is allowed to "broadcast, publish and distribute materials referring to [GMACI] and to [its] products and services" if the Agent "first secure[s] . . . written authorization with respect to any such materials which were not prepared by [GMACI]." (GMACI Ex. 4 at Art. I.C.)

the parties continued to engage in casual negotiations, GMACI never entered into a contract for 800MS's services.

In March 2005, an 800MS representative, Patrick Shores, contacted GMACI's Chief Agency Marketing Officer, Beth Spilman, regarding the 1-800-GMAC-INS telephone number. Shores informed Spilman that 800MS wished to lease 1-800-GMAC-INS directly to the Agents, and requested "up front permission . . . [for the Agents] to use GMAC Insurance's name in TV, radio, and print ads."[5] (GMACI Ex. 9.) Shores explained to Spilman that 800MS intended to offer the Agents both "advertising and the use of the number[,]" but that GMACI "will have the approval of [advertising] content before use[.]" (*Id.*) Spilman responded immediately, informing Shores as follows:

> "I want to make sure you clearly understand this:
>
> You absolutely DO NOT have our permission to use our name in any way – especially advertising."

(*Id.*) When Shores further inquired as to whether the Agents had permission to use GMACI's name in advertising, Spilman again responded that "all I'm saying is that you [800MS] may not use our name in any of your marketing materials regarding 1-800-GMACINS. You may not use our name in any way for any purpose." (*Id.*)

---

[5]Shores contends that he was simply "thinking ahead," trying to find out how GMACI would like its name displayed on any future advertising put out by the Agents using 1-800-GMAC-INS. (Shores I at 142:2-11.)

On April 27, 2005, Plaintiff sent the following email solicitation to all of the active Agents:[6]

## 1-800-GMAC-INS
## Great Number!  Want it?

As an independent GMAC Insurance agent, it would only make sense to have a number that works FOR you.  You can have this number for as little as **$10** a month!

You can lease the vanity phone number **1-800-GMAC-INS** <u>exclusively</u> by county/territory for only $10* a month!  The benefits are numerous, so secure it today before your competition beats you to it.

**Increase the number of calls you receive**
Statistics show that a good vanity number will outperform a regular number by <u>**6 to 1**</u>!

**Let other Agent's advertising dollars work for you**
With multiple agents having the same number elsewhere, but not in your territory, you will benefit from the branding effect of **1-800-GMAC-INS** – that's the Collective Advertising Advantage™.

       **\*The Cost...**
- $10 a month for exclusive use where county population is under 50,000; or
- $20 a month for exclusive use where county population is 50,001 to 250,000, or
- $30 a month for exclusive use where county population is 250,001 to 500,000, or
- $30 a month for each territory within a county with a population over 750,000. These counties will be divided into territories with at least a population of 400,000 each.
- $200 programming fee.
- $0.10 (ten cents) a minute usage billed in 6 second increments.

---

[6]Plaintiff actually hired G. Barry Klein to send the email solicitations on Plaintiff's behalf.  (Shores I at 115:23-116:3, 156:9-13.)  Klein obtained the relevant contact information directly from GMACI's website.  (Klein Dep. 26:2-12, June 12, 2007.)

**Contact us today** to see if the territory you want is available at
<u>sales@800ms.com</u> or by calling **1-888-934-6787**.

<u>www.1800gmacins.com</u>

(Please save this advertisement, or pass it on to other GMAC agents.  To stop
future emails, simply reply No Thanks in the subject line.)

(GMACI Ex. 10.)  Over the following weeks, 800MS sent additional solicitations.  These later solicitations included the following disclaimer before "**Contact us today**":

> **Disclaimer ...**
> We are not part of, or affiliated with, GMAC Insurance.  We are a private company who leases 800 vanity numbers to individuals and to companies.  We own the number **1-800-GMAC-INS** (1-800-462-2467) and lease this number exclusively to authorized agents who sell GMAC Insurance products by county/territory.

(Ex. 23 to 800 Marketing Solutions, Inc.'s Resp. to GMAC Insurance Mgmt. Corp.'s Mot. for Summ. J. on its Countercls.)

## III. The GMACI Memo

Beginning shortly after Plaintiff sent its first advertisement, several Agents contacted 800MS expressing interest in 1-800-GMAC-INS. However, some Agents contacted GMACI, rather than 800MS, asking whether 800MS was affiliated with GMACI.  (*See* Czuckowitz Dep. 126:5-18, Sept. 7, 2007; McCracken Dep. 95:6-10, 97:22-24, Sept. 12, 2007; Viola Dep. 66:4-5, Sept. 25, 2007 [hereinafter Viola I]; Johnson Aff. ¶ 5, Oct. 29 2007.)  Once Spilman became aware of the apparent confusion, she contacted two of her employees, Steve Viola and Doug McCracken, to discuss Plaintiff's advertisement.[7]  (Spilman Dep.

---

[7]Defendant contends that this initial meeting began the "process of reviewing legal remedies."  (*See* Spilman Dep. 211:16-212:3 ("We had not

8

202:14-203:11.)  The discussion focused on two primary concerns: (1) that the Agents would be "under the impression or perception or misunderstanding that we [GMACI] were involved and had actually endorsed it or were in any way providing or supporting the offer of that product," (Spilman Dep. 222:2-9; *accord* Viola I at 65:21-66:11); and (2) that 800MS was "leveraging our [GMACI's] brand identity," (McCracken Dep. 95:11-13.)  According to Spilman, Agent confusion was the "number one concern"; "if agents understood that [GMACI was] not endorsing it and still chose to . . . take advantage of the offer or to explore it further, that was fine with us."  (Spilman Dep. 262:21, 262:25-263:4.)  Ultimately, Spilman, McCracken, and Viola decided to distribute a written response to Plaintiff's advertisement.[8]

On April 29, 2005, GMACI faxed the following message ("Memo") to each of the Agents:[9]

> You may have received an email solicitation promoting the use of a toll free number, 1-800-GMAC-Ins, as a marketing aid.

---

[8] contacted legal counsel, but I was very . . . very familiar with the fact that we had language in contracts that . . . governed the use of GMAC Insurance . . . .  I was really our . . . liaison between the marketing department and our legal group, . . . [and] we were already talking about collecting enough information . . . so that we could explore our various legal remedies to the situation.") (first alteration in original).)

[8] Spilman also contacted GMACI's in-house legal counsel by email on May 5, 2005.  In her email, Spilman explained that her department "sen[t] a fax last week advising our agents that we did not authorize this solicitation" and asked, "Do you think we should more forcefully stop them from doing this?  Do we have any legal standing even if we wanted them to stop?"  (GMACI Ex. 12, Email, May 5, 2005.)

[9] GMACI also sent this message to "all parties that potentially have interactions with [A]gents."  (Viola Dep. 136:23-24, Sept. 26, 2007 [hereinafter Viola II].)

9

The company or person(s) responsible for sending this solicitation have <u>no association or affiliation with GMAC Insurance</u>, and we strongly urge caution in your evaluation of this offer.

We are in process of reviewing legal remedies to address this unauthorized attempt to capitalize on our brand identity and exploit our relationships with our agency partners.

If you have any questions, please contact your Territory Sales Manager.

(GMACI Ex. 11, GMACI Memo, April 29, 2005.) GMACI circulated the Memo again on May 13, 2005, and it posted the Memo on the GMACI Agency website, www.gmacagency.com,[10] from May 18, 2005 to August, 8, 2005. (GMACI Ex. 13, GMAC Memo, May 13, 2005; GMACI Ex. 14 at GMAC 000823, Request to Post GMAC Memo, May 18, 2005.) Shortly after GMACI published the Memo, several Agents discontinued their negotiations with 800MS. (*See*, *e.g.*, Ex. 5 to Beckwith Dep., Oct. 20, 2007; Gaminara Dep. 34:2, 35:6-22, 77:5-6, Oct. 23, 2007; Shores I at 133:17-134:21.)

DISCUSSION

I.  **Motion for Summary Judgment on Plaintiff's Claims**

800MS claims that the Memo "exposed Plaintiff to hatred, contempt and ridicule," and caused the Agents "to question the legitimacy of Plaintiff's business" and to "cancel negotiations or terminate . . . contract[s] with Plaintiff." (Second Am. Compl. ¶¶

---

[10]This website is a password-protected site that is maintained solely for GMACI and the Agents; it is not accessible to the general viewing public. (*See* GMACI Ex. 24 at Resp. 2, Def. GMAC Ins. Mgmt. Corp.'s Second Supplemental Resps. to Pl.'s First Interrogs., Oct. 8, 2007.)

20, 19, 22.)  Plaintiff now seeks to recover for libel and tortious interference with contractual and prospective business relations, as well as punitive damages and attorney's fees.  GMAC argues that it is entitled to judgment as a matter of law because Plaintiff failed to produce any evidence to support these claims.

A.  Defamation

Plaintiff first claims that the Memo constitutes actionable libel.  Under Georgia law, libel is "a false and malicious [written] defamation . . . tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."  O.C.G.A. § 51-5-1(a).  "The publication of the libelous matter is essential to recovery."  *Id.* § 51-5-1(b).  In order to establish a prima facie case of defamation, a plaintiff must produce evidence of: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the 'actionability of the statement irrespective of special harm.'" *Mathis v. Cannon*, 276 Ga. 16, 20-21, 573 S.E.2d 376, 380 (2002) (quoting Restatement (Second) of Torts § 558 (1977)).

For the defendant, truth is an absolute defense to a defamation claim.  O.C.G.A. § 51-5-6; *Bird v. Weis Broad. Corp.*, 193 Ga. App. 657, 658, 388 S.E.2d 710, 711 (1989) ("[T]ruth is a 'perfect defense' to a defamation action . . . .").  Consequently, a plaintiff's ability to establish the first element of a libel claim depends upon

whether the defendant's statements assert a literal truth.  Since "[a]n assertion that cannot be proved false cannot be held libelous[,]" statements of opinion generally are not libelous.  *Gast v. Brittain*, 277 Ga. 340, 341, 589 S.E.2d 63, 64 (2003).  However, an opinion statement may be actionable if it "impl[ies] an assertion of objective facts about the plaintiff."  *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890, 520 S.E.2d 721, 726 (2000).  "The pivotal questions are whether [the challenged] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false."  *Id.*, 520 S.E.2d at 725-26 (alteration in original).

In this case, 800MS claims that the Memo communicates both literal falsities and implicitly false assertions.  GMACI contends that Plaintiff's claim fails because the Memo was a privileged communication containing only truthful statements of fact and non-actionable opinion.

### 1.  Statements of Fact

800MS maintains that two aspects of the Memo's third paragraph, which reads as follows, are literally false:

> We [GMACI] are in process of reviewing legal remedies to address this unauthorized attempt to capitalize on our brand identity and exploit our relationships with our agency partners.

(GMACI Ex. 11.)  First, Plaintiff claims that GMACI falsely claimed to be "reviewing legal remedies" because GMACI "undeniably **was** **not** investigating its legal remedies" at the time it first published the

Memo.  (Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Summ. J. on Pl.'s Claims 7 [hereinafter Pl.'s Resp.].)  Second, Plaintiff asserts that GMACI falsely communicated that 800MS's solicitations were "unauthorized" because "no authorization was needed[.]"  (*Id.* at 7-8.)

### i.  GMACI'S REVIEW OF LEGAL REMEDIES

The parties do not genuinely dispute GMACI's conduct in response to 800MS's advertisements.[11]  Instead, the parties dispute whether these actions constituted a sufficient "review of legal remedies" to support the truth of such a statement in the Memo.  The Court finds

---

[11]The record clearly establishes each of the following facts, which the parties do not genuinely dispute:

(1)  Prior to publishing the Memo on April 29, 2005, neither Spilman, Viola, nor McCracken consulted with an attorney regarding GMACI's possible legal remedies. (*See* Spilman Dep. 211:14-212:25.)  However, they did discuss "whether it was legal . . . for [Plaintiff's solicitation] to have gone out" and "what recourse [GMACI] might have."  (*Id.* at 202:25-203:1, 203:3.)

(2)  Although Spilman is "not a lawyer," she is "the [unofficial] liaison between the marketing department and [GMACI's] legal group." (Spilman Dep. 245:5-6, 211:22-24.)

(3)  On May 5, 2005, prior to the second publication of the Memo, Spilman sent an email to GMACI attorney Steve Halstead asking: "Do you think we should more forcefully stop [800MS] from doing this?  Do we have any legal standing even if we wanted them to stop?"  (GMACI Ex. 12.)

(4)  On November 17, 2007, McCracken sent an email to various GMACI employees in which he acknowledged that if "[800MS] own[s] the # [1-800-GMAC-INS], we [GMACI] may not have much [legal] recourse." (Ex. 6 to Pomfret Dep., Email, Nov. 17, 2007.)

According to Plaintiff, this evidence demonstrates that "Defendant knew it had no 'legal remedies' to pursue." (Pl.'s Resp. at 7.)  According to GMACI, however, this same evidence demonstrates that "[t]he statement 'we are in process of reviewing legal remedies' is an accurate description of the facts" because "[t]he process of reviewing legal remedies necessarily encompasses a broad range of activities."  (GMAC Insurance's Reply in Supp. of its Mot. for Summ. J. on Pl.'s Claims 4.)

that based upon the present record no reasonable juror could conclude that Defendant *was not* "reviewing legal remedies." While one could certainly quibble with the extent of GMACI's "review," it would be unreasonable to conclude that GMACI failed to conduct *any* review of its legal remedies. Accordingly, GMACI's statement that it was "reviewing legal remedies" is not literally false.

Even if the Court were to find that genuine issues of material fact exist as to whether GMACI reviewed its legal remedies, Plaintiff's claim still must fail because there is no evidence that GMACI's statement was a "statement concerning the plaintiff." *Mathis*, 276 Ga. at 20, 573 S.E.2d at 380. A plaintiff cannot establish the first element of a libel claim solely with evidence that the defendant's statement was false; instead, this element requires proof of "a false and defamatory statement *concerning the plaintiff*." *Id.* (emphasis added). In order to "concern" the plaintiff, "'the allegedly defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.'" *Smith v. Stewart*, 660 S.E.2d 822, 828 (Ga. Ct. App. 2008) (quoting *Fiske v. Stockton*, 171 Ga. App. 601, 602, 320 S.E.2d 590, 592 (1984)). "Stated differently, the plaintiff has the burden of showing, inter alia, that the publication was about the plaintiff, that is, whether it was of and concerning [the plaintiff] as a matter of identity." *Id.* (internal quotation marks and citation omitted). Clearly, whether or not GMACI was "in process of reviewing legal

remedies" concerns GMACI, not 800MS.[12]   Thus, even assuming the statement was false, Plaintiff cannot sustain its libel claim by proving the falsity of GMACI's claim that it was "reviewing legal remedies" at the time it published the Memo.

ii.   AUTHORIZATION FOR 800MS'S SOLICITATIONS

With respect to the statement about authorization, the Court will assume, for purposes of Plaintiff's claim, that there is a genuine issue as to whether Plaintiff *needed* GMACI's authorization prior to soliciting the Agents.   However, this dispute is not material to Plaintiff's claim because the record clearly demonstrates that GMACI did not *provide* authorization for Plaintiff's email solicitations, regardless of whether such authorization was required.[13]   Spilman specifically informed Shores that 800MS "absolutely DO[ES] NOT have [GMACI's] permission to use our name in any way" and that 800MS "may not use our name in any way for any

---

[12]To the extent Plaintiff relies on an implicit communication about the legality of 800MS's advertisements, the Court will address that argument *infra* DISCUSSION Part **I.**A.*2*.

[13]800MS admits that GMACI never formally granted permission for Plaintiff to offer 1-800-GMAC-INS to the Agents. (*See* Shores I at 138:25-139:25.)   Nevertheless, Plaintiff argues that GMACI authorized the solicitations because it "admitted that it had no issue with 800MS's offering the 1-800-GMAC-INS phone number to independent agents so long as the agents were aware that there was no affiliation between Plaintiff and Defendant[.]"   (Pl.'s Resp. at 8.)   Plaintiff specifically relies on Spilman's testimony that "[GMACI's] number one concern was that agents thought that we were in some way endorsing the product, the service. . . . [I]f agents understood that we were not endorsing it and still chose to do -- to take advantage of the offer or to explore it further, that was fine with us."   (Spilman Dep. 262:21-263:4.)   This testimony, however, simply expresses Spilman's opinion about the Agents' acceptance of Plaintiff's offer; it is not evidence that GMACI actually authorized 800MS's solicitations.

purpose." (GMACI Ex. 9.) Since Plaintiff failed to establish the literal falsity of GMACI's statement regarding authorization, this statement does not constitute actionable libel.[14]

### 2. Statements of Opinion

800MS's final argument is that the overall message of the Memo "implie[s] defamatory assertions" and "clearly indicts Plaintiff of acting in an illegal, unethical and scandalous manner." (Pl.'s Resp. at 10, 2.) GMAC contends that any implicit message contained in the Memo is nothing more than non-actionable opinion.

Under Georgia law, it is well-settled that

> "the expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous. . . . A writer cannot be sued for simply expressing his opinion . . . , however unreasonable the opinion or vituperous the expressing of it might be."

*Gast*, 277 Ga. at 341, 589 S.E.2d at 64 (quoting *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 746, 337 S.E.2d 770, 771-72 (1985)). Georgia law "unquestionably excludes from defamation liability" any statements that may be characterized as "rhetorical hyperbole" or are "clearly recognizable as pure opinion because their factual premises are revealed." *Jaillett*, 238 Ga. App. at 890, 520 S.E.2d at 726 (internal quotation marks and citation omitted).

Assuming that the Memo implicitly communicates that 800MS's conduct was illegal, immoral, or unethical, this assertion is wholly

---

[14]Again, to the extent Plaintiff intends to rely upon an implicitly defamatory assertion that Plaintiff's conduct was unethical or immoral, the Court will address this argument *infra* DISCUSSION Part **I.**<u>A</u>.*2*.

subjective and incapable of being proved false. In fact, the parties clearly "entertain differing opinions" about the nature of Plaintiff's conduct. *See Gast*, 277 Ga. at 341, 589 S.E.2d at 64. Thus, to the extent the Memo implies anything about 800MS, it expresses nothing more than GMAC's opinion about 800MS's conduct in soliciting the Agents.

Although expressions of opinion generally do not give rise to claims for defamation, "[t]here is . . . no wholesale defamation exception for anything that might be labeled opinion." *Id*. (internal quotation marks and citation omitted). "An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Id*. However, "[i]f an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts." *Jaillett*, 238 Ga. App. at 890, 520 S.E.2d at 726. Therefore, "'a statement of [opinion] is actionable only if it implies the allegation of *undisclosed* defamatory facts as the basis for the opinion.'" *Id*. (quoting Restatement (Second) of Torts § 566) (alteration in original).

To the extent the Memo implies that 800MS engaged in unlawful, unethical or improper behavior, it is clear from "the context of the entire writing" that GMACI formed this opinion based on the fact that

17

800MS sent an "unauthorized" advertisement to the Agents. *See Gast*, 277 Ga. at 341, 589 S.E.2d at 64; *Jaillett*, 238 Ga. App. at 890, 520 S.E.2d at 725-26. There is nothing in the Memo that reasonably implies or suggests that 800MS engaged in any *additional* unlawful, unethical or improper behavior. In other words, there is nothing from which a reasonable jury could conclude that 800MS engaged in any illegal, unethical or immoral conduct that was not disclosed on the face of the Memo. Since GMACI's assertions are "based upon facts already disclosed in the communication, [and] . . . impl[y] nothing other than [GMACI]'s subjective interpretation of the facts[,]" *Jaillett*, 238 Ga. App. at 890, 520 S.E.2d at 726, Plaintiff cannot show that the Memo constitutes actionable libel.

B. Tortious Interference

Plaintiff also asserts a claim for tortious interference with contract and prospective business relations. In order to establish a claim for tortious interference with contract relations, business relations, or potential future business relations, a plaintiff must establish each of the following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Duke Galish, LLC v. Manton*, No. A08A0278, __ S.E.2d __, 2008 WL 2282182, at *4 (Ga. Ct. App. June 5, 2008). Plaintiff contends that

18

GMACI "intentionally, maliciously and without privilege . . . direct[ed] [the] independent agents to withdraw from negotiations and/or terminate their contractual relationship[s] with the Plaintiff." (Second Am. Compl. ¶¶ 42, 46.) GMACI is entitled to summary judgment, however, because Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to the first two elements of Plaintiff's claim.

First, Plaintiff failed to establish that GMAC engaged in "improper action or wrongful conduct." *Duke Galish*, 2008 WL 2282182, at *4. In order to establish that a defendant engaged in "wrongful conduct," the plaintiff "must show more than that the defendant simply persuaded a person to break a contract." *Kirkland v. Tamplin*, 285 Ga. App. 241, 244, 645 S.E.2d 653, 656 (2007) (internal quotation marks and citation omitted). Instead, the plaintiff must present evidence of "conduct wrongful in itself," or "action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *Id.* (internal quotation marks and citation omitted). As a matter of law, Plaintiff cannot rely on the Memo as a defamatory "predatory tactic." *See supra* DISCUSSION Part **I.**<u>A.</u>; *accord Rose v. Zurowski*, 236 Ga. App. 157, 159, 511 S.E.2d 265, 267 (1999) ("[D]ivulging truthful information and expressing critical personal opinions . . . are not wrongful or unlawful acts and . . . cannot, therefore, give rise to

liability for tortious interference . . . ." (internal quotation marks and footnote omitted)). The remaining evidence establishes nothing more than that GMAC persuaded the Agents to avoid Plaintiff's offer.[15] *See Kirkland*, 285 Ga. App. at 244, 645 S.E.2d at 656.

Additionally, there is no evidence that GMACI acted "without privilege" in communicating with the Agents. *Duke Galish*, 2008 WL 2282182, at *4. "To be liable for tortious interference . . . , one must be a stranger to the business relationship giving rise to and underpinning the contract." *Benefit Support, Inc. v. Hall County*, 281 Ga. App. 825, 830, 637 S.E.2d 763, 769 (2006) (internal quotation marks, citation, and emphasis omitted). "Where the defendant has 'a bona fide economic interest in the contract or relationship with one of the parties to the contract,' he is not a stranger to the contract and acts with privilege with regard to that contract." *Kirkland*, 285 Ga. App. at 245, 645 S.E.2d at 656-57 (quoting *Disaster Servs., Inc. v. ERC P'ship*, 228 Ga. App. 739, 741, 492 S.E.2d 526, 529 (1997)). GMACI clearly is not "a stranger to the business relationship[s]" between Plaintiff and the Agents. *See Benefit Support*, 281 Ga. App.

---

[15]In addition to the Memo, Plaintiff relies upon two emails from independent Agents to establish GMACI's "predatory tactics." Both of these emails provide some evidence that GMACI instructed its Agents not to do business with Plaintiff. (Ex. 5 to Beckwith Dep., Email, Oct. 20, 2007 ("Patrick, GMAC is recommending that we not us[e] [1-800-GMAC-INS]. My Regional VP wants me to not do it."); Ex. 10 to Gaminara Dep., Email, Oct. 23, 2007 ("Please cancel my 1-800-GMAC-INS . . . . I have talk[ed] to my Marke[t]ing Rep – which is my Territory Sales Manager, and I cannot [advertise] any kind of GMAC[.] If I do so, He will take the company away from me.").) However, there is no evidence that discouraging the Agents from accepting Plaintiff's offer was "conduct wrongful in itself." *Kirkland*, 285 Ga. App. at 244, 645 S.E.2d at 656.

at 830, 637 S.E.2d at 769. Plaintiff marketed 1-800-GMAC-INS as an aid in selling GMACI products, and Plaintiff only solicited agents who sell GMACI insurance. (*See* Leder Dep. 29:18-23, Oct. 4, 2007.) GMACI produced evidence of its concerns that "Plaintiff was leveraging [its] brand identity" and that the Agents "were confused about the offer." (McCracken Dep. 95:12-13; Spilman Dep. 221:16-17.) These are "bona fide economic interests" which GMACI was entitled to protect, and thus the communications relating to Plaintiff's offer were privileged.

Finally, there is no evidence that GMACI acted "with malice with the intent to injure" Plaintiff. A malicious act is "any unauthorized interference [with a plaintiff's rights] . . . without legal justification." *Batayias v. Kerr-Mcgee Corp.*, 267 Ga. App. 848, 850, 601 S.E.2d 174, 176 (2004) (internal quotation marks omitted) (second alteration in original); *see also Singleton v. Itson*, 192 Ga. App. 78, 79, 383 S.E.2d 598, 599 (1989) ("[An] act is malicious when it is done with knowledge of the plaintiff's rights and with the intent to interfere with them." (internal quotation marks and citation omitted)). As noted above, GMACI produced affirmative evidence that it was motivated by legitimate business interests, and Plaintiff did not produce any evidence to the contrary. In addition, there is nothing in the record to support the inference that GMACI intended to interfere with or cause injury to Plaintiff's business, and "[u]nsupported inferences or conjecture

21

regarding a defendant's motivation [do] not suffice to show malice." *Culpepper v. Thompson*, 254 Ga. App. 569, 572, 562 S.E.2d 837, 841 (2002) (internal quotation marks and citation omitted).

Since Plaintiff failed to create a triable issue of fact on at least two elements of its tortious interference claims, GMACI is entitled to summary judgment.

### C. Punitive Damages & Litigation Expenses

Defendant has prevailed as a matter of law on each of Plaintiff's substantive claims; therefore, Plaintiff's claims for punitive damages and litigation expenses likewise fail as a matter of law. *See Gardner v. Kinney*, 230 Ga. App. 771, 772, 498 S.E.2d 312, 313 (1998) ("Because litigation expenses (costs and attorney fees) are wholly ancillary, they are not recoverable when no damages area awarded."); *Barnes v. White County Bank*, 170 Ga. App. 681, 681, 318 S.E.2d 74, 76 (1984) ("Punitive damages may not be recovered where there is no entitlement to compensatory damages.").

## II. Cross Motions for Summary Judgment on GMACI's Counterclaims

GMACI asserts counterclaims for unfair competition and false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as various state law claims. Both parties have filed motions for summary judgment as to these counterclaims. After reviewing the record as well as the parties' briefs, which, incidentally, were not models of clarity insofar as the counterclaims are concerned, the Court finds that genuine issues of material fact

22

exist to be tried as to the counterclaims.  Therefore, the Court denies both motions for summary judgment on GMACI's counterclaims.

CONCLUSION

For the reasons stated herein, the Court grants GMAC Insurance Management Corporation's Motion for Summary Judgment on Plaintiff's Claims (Doc. 69).  Finding that genuine issues of material fact remain to be tried, the Court denies GMAC Insurance Management Corporation's Motion for Summary Judgment on Its Counterclaims (Doc. 64) and Plaintiff's Motion for Summary Judgment (Doc. 66).[16]

IT IS SO ORDERED, this <u>14th</u> day of July, 2008.

<u>S/Clay D. Land</u>
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[16]The Court also denies each of the remaining pending motions.  Since the Court did not consider any improper evidence in reaching the conclusions expressed in this Order, Plaintiff 800MS's Notice of Objection and Motion to Strike Defendant GMACI'S Statement of Additional Material Facts (Doc. 126) is denied.  Additionally, since the Court did not consider the evidence relating to Mr. Shores's personal background in reaching its decision to grant summary judgment on Plaintiff's claims, 800MS's Motion to Strike and File Under Seal Portions of GMAC Insurance's Reply in Support of Its Motion for Summary Judgment on Plaintiff's Claims (Doc. 133) is denied as moot.  Finally, the Court denies each party's request for sanctions.  Plaintiff failed to file a proper motion for sanctions, which likely would be denied even if properly filed.  *Cf.* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . . .").  As for Defendant's Motion for Sanctions (Doc. 44), the Court finds that such motion lacks merit.